# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA (Harrisburg)

| | |
|---|---|
| **THOMAS D. GORTON, II**, and his wife, ) | Civ. Action No. 1:17-1110 |
| **RHONDA J. GORTON,** ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| ) | |
| **Air & Liquid Systems Corporation** ) | |
| *As Successor-by-Merger to Buffalo Pumps*, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## OPINION

**CONTI, Chief District Judge**

### I.      Introduction

Pending before the court in this asbestos case initiated by plaintiffs Thomas D. Gorton, II

("Mr. Gorton") and Rhonda J. Gorton (together with Mr. Gorton, "plaintiffs") is a motion to

dismiss the complaint (ECF No. 4) filed by defendant Ford Motor Company ("Ford") and a

motion to dismiss the complaint filed by Pacific Bell Telephone Co. ("Pacific Bell"), Nevada

Bell Telephone Co. ("Nevada Bell"), AT&T Corp.[1] and AT&T, Inc. (collectively with Pacific

Bell, Nevada Bell, and AT&T Corp., the "telephone defendants").[2]  Three main arguments are

raised in support of dismissal of the complaint: (1) the court is without subject-matter jurisdiction

---

[1]      Plaintiffs named AT&T Communications Inc. as a defendant in this complaint. (ECF No. 1-4 at 20.) Counsel for AT&T Corp. represented at the hearing held on January 29, 2018, that in 2010, AT&T Communications Inc. merged into AT&T Corp., which was not named as a defendant in the complaint. (H.T. 1/29/2018 at 14-15, 36.) The parties did not dispute that AT&T Corp. was the correct party to be served in this case. The court under those circumstances instructed plaintiffs to amend the complaint to reflect the correct name of the entity it desired to sue, i.e., AT&T Corp. as opposed to AT&T Communications. (Id. at 14.)

[2]      The court acknowledges that there are other telephone-company defendants in this case that did not file a motion to dismiss the complaint.

over the claims asserted against the telephone defendants because those claims fall under the exclusive jurisdiction of state workers' compensation systems; (2) the court is without personal jurisdiction over any of the moving defendants; and (3) plaintiffs failed to state any plausible claims for relief.

The arguments with respect to this court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) are not persuasive because worker's compensation exclusivity does not limit a federal court's jurisdiction. That argument is more appropriately addressed on the merits of the case. As explained in this opinion, personal jurisdiction may be based upon specific or general jurisdiction. Here, there is no specific jurisdiction. With respect to general jurisdiction, the issue is whether Ford and the telephone defendants consented to general jurisdiction in Pennsylvania under 42 PA. CONS. STAT. § 5301. Because Pacific Bell, Nevada Bell, and AT&T, Inc. were not registered as foreign corporations in Pennsylvania at the time plaintiffs claim that their acts or omissions resulted in Mr. Gorton's exposure to asbestos and there are otherwise insufficient facts to establish personal jurisdiction, the motions to dismiss with respect to those defendants will be granted for lack of personal jurisdiction, pursuant to Rule 12(b)(2). Ford and AT&T Corp. were registered as foreign corporations under Pennsylvania law at the time plaintiffs allege their acts or omissions caused Mr. Gorton's asbestos exposure. Plaintiffs' allegations against those defendants, however, are conclusory and do not pass muster under Rule 12(b)(6). The claims asserted against them will be dismissed without prejudice.

## II.     Procedural History

On June 23, 2017, this diversity action was removed from the Dauphin County Court of Common Pleas to the United States District Court for the Middle District of Pennsylvania. (ECF No. 1.) Plaintiffs, who are husband and wife, named at least sixty-five defendants in the

complaint, including Ford and the telephone defendants. (Id. at 1-4.) Plaintiffs assert the following six counts in the complaint:

- Count I: Products Liability;

- Count II: Breach of Implied Warranty;

- Count III: Negligence;

- Count IV: Intentional Conduct—Fraudulent Concealment;

- Count V: Premises Liability (*against only the telephone defendants*); and

- Count VI: Loss of Consortium.

(Id.)

On June 30, 2017, Ford filed a motion to dismiss the complaint and a brief in support of the motion. (ECF Nos. 4, 101.) On the same day, the telephone defendants filed a motion to dismiss the complaint and a brief in support of the motion. (ECF Nos. 10, 102.) On July 14, 2017, plaintiffs filed a response in opposition to each of the motions to dismiss. (ECF Nos. 27, 28.) On July 25, 2017, Ford filed a reply brief in support of its motion to dismiss. (ECF No. 41.) On July 28, 2017, the telephone defendants filed a reply brief in support of its motion to dismiss. (ECF No. 50.)

On January 29, 2018, the court held a hearing with respect to the motions to dismiss. (H.T. 1/29/2018.) Plaintiffs entered three exhibits into evidence. (Id. at 20.) The court having heard from the parties determined supplemental briefing was necessary to resolve the pending motions. (Id. at 46-51.) On February 8, 2018, Ford and the telephone companies filed their supplemental briefs in support of their motions to dismiss. (ECF Nos. 230, 232.) On February 21, 2018, plaintiffs filed their supplemental briefs in response. (ECF Nos. 254, 255.)

The motions to dismiss having been fully briefed are now ripe to be decided by the court.

### III. Factual Allegations in the Complaint

Mr. Gorton sustained an asbestos-related injury, and in January 2017, was diagnosed with Pleural Mesothelioma. (ECF No. 1-4 ¶ 12.) Mr. Gorton was informed of his diagnosis in February 2017. (Id.) Plaintiffs alleges that while Mr. Gorton was employed by some of the named defendants he was exposed to asbestos through the use of products created by some of the named defendants or while employed on the premises of some of the named defendants. (Id. ¶ 7.)

According to plaintiffs, each defendant has or is "transacting business in Dauphin County, Pennsylvania." (Id. ¶ 6.) Ford has a service address of "c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101." (Id. ¶ 2(r).) Pacific Bell, "dba AT&T California" has a service address of "CT Corporation System, 818 W. 7th Street, Suite 930, Los Angeles, California 90017." (Id. ¶ 2(hhh).) Nevada Bell, "d/b/a AT&T Nevada," has a service address of "The Corporation Trust Company of Nevada, 701 S. Carson Street, Suite 200, Carson City, Nevada 89701." (Id. ¶ 2(kkk).) AT&T, Inc. and AT&T Communications Inc., "f/k/a AT&T Communications of Ohio, Inc.," have a service address of "CT Corporation System, 116 Pine Street, Suite 320, Dauphin County, Harrisburg, Pennsylvania 17101." (Id. ¶ 2(lll) and (mmm).)

From the 1950s through the early 2000s, Mr. Gorton breathed air that was contaminated with asbestos dust and fibers shed by asbestos products sold, manufactured, supplied, or distributed upon the premises owned by defendants named in this action, including Ford and the telephone companies. (Id. ¶ 9.) Specifically, Ford manufactured and sold asbestos-containing brake shoes, linings, blocks, and pads and other automotive products. (Id. ¶ 11(r).) The telephone companies used or manufactured "various asbestos products to include but not limited to insulation, both spray and pre-formed, wiring, fire-proofing materials, and asbestos bags or

pillows used to seal and fireproof the cable holes," and controlled "various facilities throughout the United States where plaintiff worked." (Id. ¶ 11(hhh, jjj, kkk, lll, mmm).)

From September 1962 until July 1968, Mr. Gorton was employed by Pacific Bell in Los Angeles, California. (Id. ¶ 8(b).) In 1978, and from 1986 through 1988, Mr. Gorton was employed by Nevada Bell in Carson City, Nevada, North Lake Tahoe, Nevada, and Reno, Nevada. (Id. ¶ 8(e).) From 1986 through 1988, Mr. Gorton was employed by AT&T, Inc. and AT&T Communications Inc. in Columbus, Ohio. (Id. ¶ 8(f)-(g).)

**IV. Facts Based upon Evidence Presented at the Hearing on January 29, 2018, and attached to the Parties' Submissions with respect to the Motions to Dismiss**

AT&T Corp. has been registered as a foreign corporation with the Commonwealth of Pennsylvania since June 4, 1912. (H.T. 1/29/2018 at 20; Pls.' Ex. 1.) Ford has been registered as a foreign corporation with the Commonwealth of Pennsylvania since March 15, 1920. (H.T. 1/29/2018 at 20; Pls.' Ex. 2.) Pacific Bell has been registered as a foreign corporation with the Commonwealth of Pennsylvania since February 5, 1996. (H.T. 1/29/2018 at 20; Pls.' Ex. 3.) Nevada Bell and AT&T, Inc. never registered as foreign corporations with the Commonwealth of Pennsylvania. (H.T. 1/29/2018 at 16-17.)

Mr. Gorton testified that for "less than six months" in 1981 he worked with "friction material and brakes at a garage" called "Olson Brothers" when he lived in Oregon. (ECF No. 230-2 at 2, 5.) A "itemized statement of earnings" from the Social Security Administration showed that Mr. Gorton worked for "Olson Bros[.] Service Inc[.]" in 1982. (ECF No. 254-1 at 1, 4.) Specifically, Mr. Gorton performed "brake jobs, minor repairs, electrical repairs, and even pump[ed]…gas." (ECF No. 230-2 at 2, 5.) Mr. Gorton while employed by Olson Brothers

performed "[p]robably a half a dozen or so" brake jobs and worked on "[a]ll the different makes" of vehicles, including Ford vehicles. (<u>Id.</u> at 2, 4.)

## V. Standard of Review

### A. Federal Rule of Civil Procedure 12(b)(1)

As a threshold matter this court must inquire whether it has subject-matter jurisdiction. <u>In re Orthopedic "Bone Screw" Prods. Liab. Litig.</u>, 132 F.3d 152, 155 (3d Cir. 1997); <u>Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc.</u>, 905 F.2d 42, 45 (3d Cir.1990) ("It is an elementary principle that federal courts are courts of limited jurisdiction, empowered to hear cases only as provided for under Article III of the Constitution and congressional enactments pursuant thereto.") (citing <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541 (1986)). Consequently, "[a] federal court is bound to consider its own jurisdiction preliminary to consideration of the merits." <u>Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Phila.</u>, 657 F.2d 29, 36 (3d Cir.1981) (citing <u>American Fire & Cas. Co. v. Finn</u>, 341 U.S. 6 (1951)).

The burden of establishing jurisdiction lies with the party seeking to invoke the court's jurisdiction. <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir.1991). A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may facially or factually challenge the court's jurisdiction. <u>Gould Electronics, Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir.2000) (citing <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir.1977)). In reviewing a facial attack, a court considers the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff. <u>Gould</u>, 220 F.3d at 176; <u>PBGC v. White</u>, 998 F.2d 1192, 1196 (3d Cir.1993). In reviewing a factual attack, the court may consider evidence outside the pleadings, including affidavits. <u>Gotha v. United</u>

<u>States</u>, 115 F.3d 176, 178-79 (3d Cir. 1997). When a court's power to hear a case is at issue, a court is free to weigh the evidence regarding jurisdiction. <u>Mortensen</u>, 549 F.2d at 891-92.

### B. Federal Rule of Civil Procedure 12(b)(2)

A motion to dismiss pursuant to Rule 12(b)(2) challenges the ability of a court to exercise jurisdiction over a party to the dispute. The term "jurisdiction" refers to the power of a court to act and adjudicate concerning the subject matter in a given case. <u>Noxon Chem. Prods. Co. v. Leckie</u>, 39 F.2d 318 (3d Cir. 1930). Because federal courts, unlike their state counterparts, are courts of limited jurisdiction, it is incumbent upon the plaintiff to demonstrate that jurisdiction is appropriate. <u>Tanzymore v. Bethlehem Steel Corp.</u>, 457 F.2d 1320 (3d Cir. 1972). "When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." <u>Mellon Bank (East) P.S.F.S. v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992). "Once the plaintiff has made out a prima facie case in favor of personal jurisdiction, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' " <u>Id.</u> (quoting <u>Carteret Sav. Bank v. Shushan</u>, 954 F.2d 141, 150 (3d Cir. 1992)). A plaintiff's prima facie showing of the minimum contacts sufficient to establish personal jurisdiction over a defendant "must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts[.]" 4 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ADAM N. STEINMAN, FEDERAL PRACTICE AND PROCEDURE § 1067.6 (4th ed. 2015).

The district court may hold a "quasi-evidentiary hearing that may consist of oral testimony, stipulations, affidavits, deposition transcripts, authenticated documents, answers to interrogatories, and requests for admissions." <u>Id.</u> "[T]he court may apply a preponderance-of-evidence standard or a standard intermediate between the preponderance-of-evidence guideline

and a prima facie showing." Id. "If both the plaintiff and the defendant produce supporting evidence and affidavits on the motion,…the plaintiff's prima facie showing will be considered sufficient and the motion to dismiss will be denied, notwithstanding the defendant's presentation of contrary material." Id. In lieu of an evidentiary hearing, "the court must accept the facts the complaint alleges relating to the jurisdiction issue as true, at least to the extent they are uncontroverted by whatever material the defendant submits in support of its motion to dismiss." Id.; Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). If there are factual disputes, "the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." WRIGHT, MILLER, & STEINMAN, supra.

### C. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.. . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

(Id.) (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

The Court of Appeals for the Third Circuit has instructed that "a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Constr., Corp., 809 F.3d 780, 876-87 (3d Cir. 2016). The court of appeals explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."(citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).

## VI. Discussion

### A. Subject-Matter Jurisdiction

The telephone defendants argue that "this Court lacks subject[-]matter jurisdiction…because the Gortons' claims fall under the exclusive jurisdiction of California, Nevada, and Ohio's workers' compensation systems." (ECF No. 50 at 1.) The Third Circuit Court of Appeals has explained that "[a]lthough workers' compensation exclusivity is a

threshold jurisdictional concern in state court,…state substantive law cannot deprive a federal court of its diversity jurisdiction." Blaynar v. Genova Prods., Inc., 861 F.3d 426, 431 n.5 (3d Cir. 2017). In accordance with the rationale of Blaynar, the telephone defendants' argument about workers' compensation exclusivity does not present a "threshold jurisdictional issue[.]" Id. The telephone defendants' motion to dismiss will be denied with respect to their argument that this court lacks subject-matter jurisdiction to decide this case. The court in Part C of this discussion addresses the Rule 12(b)(6) arguments made by Ford and the telephone defendants with respect to whether plaintiffs in the complaint stated a plausible claim for relief.

### B. Personal Jurisdiction

"[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry. First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998). Rule 4(e) of the Federal Rules of Civil Procedure provides that a federal district court may exercise personal jurisdiction over a non-resident defendant to the extent authorized by the law of the forum state in which it sits. Provident Nat'l Bank v. Cal. Fed. Sav. and Loan Ass'n, 819 F.2d 434 (3d Cir. 1987). Pennsylvania's long arm statute allows a court to exercise personal jurisdiction over a person "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 PA. CONS. STAT. § 5322(b). Thus, the statute is coextensive with the due process clause of the Fourteenth Amendment to the United States Constitution. Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir.1984).

The due process clause of the Fourteenth Amendment prohibits the exercise of personal jurisdiction over a non-resident defendant unless that defendant has certain "minimum contacts" with the forum state so that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King v. Rudzewicz, 471 U.S. 462, 471–72 (1985) (citing International Shoe Co., 326 U.S. at 319).

A court may exercise personal jurisdiction over a non-resident defendant if the plaintiff can show that the court has specific jurisdiction *or* general jurisdiction over the non-resident defendant.

## 1. Specific Jurisdiction

Specific jurisdiction is dependent upon the relationship of the litigation to the defendant's contacts with the forum, i.e., the court's focus is on the minimum contacts between the non-resident defendant and the forum. Eubanks v. Filipovich, Civ. Action No. 12-4299, 2012 WL 6731123, at *2 (E.D. Pa. Dec. 27, 2012) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). Specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant "'should reasonably anticipate being haled into court'" in that forum. Vetrotex, 75 F.3d at 151 (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "A single contact [between the non-resident defendant and the forum] may be sufficient where [the non-resident defendant's] connection to the forum is substantial." Eubanks, 2012 WL 6731123, at *2. "Simply put, the defendant's contacts with the forum state must be material to the claim. The court may not

exercise personal jurisdiction if the defendant's contacts with the forum are 'too attenuated.'" Jarzynka v. St. Thomas Univ. Sch. of Law, 323 F.Supp.2d 660, 663-64 (W.D. Pa. 2004) (quoting World-Wide Volkswagen, 444 U.S. at 299).

This fact-intensive inquiry has three parts: first, the defendant must have purposefully directed its activities at the forum; second, the litigation must arise out of or relate to at least one of those activities; finally, if the prior two requirements are satisfied, the court may consider whether the assertion of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). Due process requires the plaintiff's claim "to stem from a constitutionally cognizable contact [by the defendant] with [the forum] State." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1980).

In this case, plaintiffs argue that because Mr. Gorton's injuries, which were allegedly caused by the actions of defendants, manifested in Pennsylvania, this court has specific jurisdiction over Ford and the telephone defendants. The Supreme Court has recognized, however, that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden v. Fiore, 134 S.Ct. 1115, 1125 (2014). In other words, the relevant inquiry is a defendant's relationship with the forum and not the plaintiff's choice of residence or his or her location when he or she became aware of his or her injuries. The Pennsylvania Superior Court has explained: "The mere fact that…[the plaintiff's injury] was discovered in Pennsylvania, or that it manifested in Pennsylvania, does not necessarily mean that it was *caused* in Pennsylvania." Mendel v. Williams, 53 A.3d 810, 823 (Pa. Super. Ct. 2012). The court must look to the state in which the injury was caused to determine whether it has specific jurisdiction over a

defendant. Id. at 824. ("That the harm may have continued in Pennsylvania and was ultimately discovered in Pennsylvania does not alter the fact that it originated in New Jersey.").

Plaintiffs did not satisfy their burden to show this court has specific jurisdiction over any of the moving defendants, i.e., plaintiffs did not show that his injuries were caused by any of the moving defendants' activities that were directed at the state of Pennsylvania. Plaintiffs allege that Mr. Gorton alleged that he worked for the telephone defendants in California, Nevada, and Ohio. He does not allege that he had any contact with the telephone defendants in the state of Pennsylvania. The evidence of record shows that with respect to Ford, Mr. Gorton worked on Ford vehicles while in Corvallis, Oregon. There is no allegation or evidence that Mr. Gorton had any contact with Ford in Pennsylvania. Under those circumstances, plaintiffs' claims against Ford and the telephone defendants do not "stem from a constitutionally cognizable contact" by Ford or a telephone defendant with Pennsylvania. World–Wide Volkswagen, 444 U.S. at 299. This court, therefore, does not have personal jurisdiction by way of specific jurisdiction over Ford or any telephone defendant.

## 2. General Jurisdiction

"Since International Shoe, 'specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role.'" Daimler AG v. Bauman, 134 S.Ct. 746, 761 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 925 (2011)) (alterations in original). A court may base its general jurisdiction over a defendant-corporation upon the defendant-corporation's relationship with the forum state **or** the defendant-corporation's ***consent*** to general jurisdiction in the forum state. Bors v. Johnson & Johnson, 208 F.Supp.3d 648, 651 (E.D. Pa. 2016) ("Courts can find personal jurisdiction in three ways: consent to general jurisdiction, general jurisdiction, or specific jurisdiction.").

## a. General jurisdiction based upon the defendant's contacts with a forum

General jurisdiction exists when the defendant's contacts with a forum are "so 'continuous and systematic as to render [it] essentially at home in the forum State.'" <u>Daimler</u>, 134 S.Ct. at 761 (quoting <u>Goodyear</u>, 564 U.S. at 919 (alteration in the original). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." <u>Id.</u> at 760. "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" <u>Id.</u> (quoting <u>Goodyear</u>, 564 U.S. at 923). The Supreme Court in <u>Daimler</u> explained:

> With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] ... bases for general jurisdiction." <u>Id.</u>, at 735. <u>See also</u> Twitchell, 101 Harv. L.Rev., at 633. Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. <u>Cf.</u> <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010) ("Simple jurisdictional rules ... promote greater predictability."). These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

<u>Daimler</u>, 134 S.Ct. at 760. "'[C]ontinuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" <u>Id.</u> at 757 (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 318 (1945)). A corporation will not be considered "at home" for purposes of general jurisdiction in every state in which it "engages in a substantial, continuous, and system course of business." <u>Id.</u> at 760-61. The court must assess whether the corporation's "'operations within a state [are] so substantial and of such a nature as to justify suit…*on causes of action arising from dealings entirely distinct from those activities*.'" <u>Id.</u> at 761 (quoting <u>International Shoe</u>, 326 U.S. at 318) (emphasis in original). The Third Circuit Court of Appeals has recognized: "[I]t is 'incredibly difficult to establish general

jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'" Chavez v. Dole Food Co., Inc., 836 F.3d 205, 223 (3d Cir. 2016).

The "textbook case of general jurisdiction" is Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952). Daimler, 134 S.Ct. at 756. In that case, the Supreme Court held that a court in Ohio could exercise general jurisdiction over the defendant-corporation, which was "a company incorporated under the laws of the Philippines, where it operated gold and silver mines." Id. During World War II, the president of the corporation moved to Ohio, "where he kept an office, maintained the company's files, and oversaw the company's activities." Id. "All of the…[company's] activities were directed by the company's president from within Ohio." Id. at 756 n.8. The plaintiff sued the company for activities that did not arise in Ohio and were unrelated to the corporation's activities in Ohio. Id. at 756. The Court held the court in Ohio could exercise general jurisdiction over the corporation because Ohio had become "'the corporation's principal, if temporary, place of business.'" Id. (quoting Perkins, 465 U.S. at 780, n.11). In other words, the corporation was "at home" in Ohio. Id.

In Daimler, the Court considered whether the corporate activity of Daimler's indirect subsidiary, MBUSA, could be attributed to Daimler for the purposes of personal jurisdiction, *and* whether that corporate activity was sufficient to establish personal jurisdiction over the defendant. The Court described the relevant corporate activity of the indirect subsidiary in the forum state, i.e., California, as follows:

> Although MBUSA's principal place of business is in New Jersey, MBUSA has multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine. According to the record developed below, MBUSA is the largest supplier of luxury vehicles to the California market. In particular, over 10% of all sales of new vehicles in the United States take place in California, and MBUSA's California sales account for 2.4% of Daimler's worldwide sales.

Daimler, 134 S.Ct. at 752. The Court did not decide "whether a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary[,]" id. at 759, because even if the activities of MBUSA were imputable to Daimler, "there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's **slim contacts** with the State hardly render it at home there[,]" id. at 760 (emphasis added). The Court explained:

> Here, neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Burger King Corp., 471 U.S., at 472, 105 S.Ct. 2174 (internal quotation marks omitted).

Id. at 761.

Here, plaintiffs did not present allegations or evidence sufficient to show that Ford's or a telephone defendant's contacts with Pennsylvania were so significant it would be considered "at home" in Pennsylvania. Plaintiffs did not show that—at the time the complaint was filed—any moving defendant (1) was incorporated in Pennsylvania, or (2) had a principal place of business in the state. Plaintiffs argued that some of the moving defendants conducted business in Pennsylvania, but did not prove that any moving defendant was "at home" in Pennsylvania and should be subject to general jurisdiction there; indeed, any evidence presented by plaintiffs with respect to personal jurisdiction pales in comparison to the evidence of the in-state activities of MBUSA in Daimler, which the Court held were insufficient to establish the court's general jurisdiction over MBUSA or its parent-corporation, Daimler. Id. at 752, 761.

**b. General jurisdiction based upon consent to personal jurisdiction via 42 Pa. Cons. Stat. § 5301**

"Consent is a traditional basis for assertion of jurisdiction long upheld as constitutional." Bane v. Netlink, Inc., 925 F.2d 637, 641 (3d Cir. 1991). Consent to general jurisdiction comes in different forms, e.g., in a forum selection clause, by making an appearance and arguing the merits of the case in court, or, in Pennsylvania, as prescribed in 42 Pa. Cons. Stat. § 5301. Tanya J. Monestier, Registration Statutes, General Jurisdiction, and the Fallacy of Consent, 36 Cardozo L. Rev. 1343, 1368 1380-82 (2015); see Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982) ("A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court."). Consent to general jurisdiction differs from general jurisdiction based upon a defendant-corporation's significant relationship to the forum state; indeed, if a defendant-corporation consents to general jurisdiction in a forum state, it may be sued in that state even if it does not otherwise conduct any activity there. Bors, 208 F.Supp.3d at 651 (finding general jurisdiction over a defendant-corporation even though its "only connection with Pennsylvania…arose from its…decision to register to do business as a foreign corporation in Pennsylvania"). In other words, a corporation may "'freely agree to be subject to personal jurisdiction in other states—so long as that consent is knowing and voluntary in the eyes of the law.'" Pfizer Inc. v. Mylan Inc., Civ. Action No. 15-26, 2016 WL 1319700, at *10 (D. Del. Apr. 4, 2016) (quoting Forest Labs., Inc. v. Amneal Pharm. LLC, Civ. Action No. 14-508, 2015 WL 880599, at *14 (D. Del. Feb. 26, 2015)).

In this case, whether Ford or a telephone defendant consented to general jurisdiction in Pennsylvania is dependent upon the application of section 5301, which is a section of Pennsylvania's long-arm statute that is distinct from the section that is coextensive with the Due Process Clause of the Fourteenth Amendment. Section 5301, in pertinent part, provides:

> (a) General rule.--**The existence of any of the following relationships between a person and this Commonwealth shall**

**constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person**, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

…

(2) Corporations.--

(i) Incorporation under or **qualification as a foreign corporation under the laws of this Commonwealth**.

(ii) Consent, to the extent authorized by the consent.

(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 PA. CONS. STAT. § 5301 (emphasis added). Section 5301 explicitly provides that qualifying as a foreign corporation in Pennsylvania subjects the corporation to the general jurisdiction of Pennsylvania courts and was first enacted in 1978.[3] Id. (effective June 27, 1978). Since 1978, Pennsylvania has been the only state that "spells out the jurisdictional consequences associated with registering to do business." Monestier, 36 Cardozo L. Rev. at 1368. "Not surprisingly, Pennsylvania courts have interpreted…[section 5301(a)(2)] as meaning exactly what it says: that Pennsylvania courts have general jurisdiction over a corporation that has 'qualif[ied] as a foreign corporation' under the state registration statute." Id. (quoting 42 PA. CONS. STAT. § 5301). Federal courts within the Third Circuit have recognized that "qualifi[ed] as a foreign corporation" in section 5301(a)(2) means that the corporation has applied for and received a "certificate of authority" to do business in Pennsylvania. Bane v. Netlink, Inc., 925 F.2d 637, 640 (3d Cir. 1991); In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig., 735 F. Supp. 2d 277, 310 (W.D. Pa. 2010), aff'd, 683 F.3d 462 (3d Cir. 2012).

---

[3]     Section 5301 was amended in 1981 with respect to subsection (a)(3)(i), which covers "[p]artnerships, limited partnerships, partnership associations, professional associations, unincorporated associations and similar entities" and is not implicated in this case. 42 PA. CONS. STAT. § 5301(a)(3).

Pursuant to section 5301(a), "registration by a foreign corporation [in Pennsylvania] carries with it consent to be sued in Pennsylvania courts." Bane, 925 F.2d at 640. The court of appeals in Bane held that the district court erred when it concluded that it did not have personal jurisdiction over the corporate defendant who was authorized to do business in Pennsylvania under section 5301(a). Id. at 641. The court of appeals explained that general jurisdiction existed over the corporate defendant in Bane either under subsection (a)(2)(i), since it was a qualified foreign corporation by reason of its authorization to conduct business in Pennsylvania, or under subsection (a)(2)(ii), since the corporation's certificate of authority can be viewed as consent to be sued in Pennsylvania. Id. at 640–41. The district court's order dismissing the case for lack of personal jurisdiction over the defendant was reversed and the case was remanded on that basis. Id. at 641.

Ford and the telephone defendants argue that Bane is no longer good law after Daimler. Since Daimler, a majority of federal courts have held that general jurisdiction may not be based solely upon a corporation's compliance with a state's registration statute. Genuine Parts Co. v. Cepec, 137 A.3d 132 (Del. 2016) (noting that "the majority of federal courts" have held that "consent by registration…[is not] a constitutional basis for general jurisdiction after Daimler….") (collecting decisions); see e.g., Display Works, LLC v. Barley, 182 F.Supp.3d 166, 179 (D.N.J. 2016); AstraZeneca AB v. Mylan Pharms., 72 F.Supp.3d 549, 556-557 (D. Del. 2014). Those courts reasoned that the test to be employed under the Due Process Clause of the Fourteenth Amendment is whether a corporation's contacts with a forum are "so 'continuous and systematic as to render [it] essentially at home in the forum State.'" Daimler, 134 S.Ct. at 761 (quoting Goodyear, 564 U.S. at 919 (alteration in the original)). "Finding mere compliance with such statutes sufficient to satisfy jurisdiction would expose companies with a

national presence…to suit all over the country, a result specifically at odds with <u>Daimler</u>." <u>AstraZeneca</u>, 72 F.Supp.3d at 558. This court agrees that merely registering as a foreign corporation with a state—in the absence of specific statutory language providing otherwise— does not equate to the foreign corporation being "at home" in the state; rather, at best, registering as a foreign corporation in a state is "doing business" in the state, which the Supreme Court recognized is not the same as being "at home" in a state. <u>Daimler</u>, 134 S.Ct. at 762 n.20. It follows that if a defendant's alleged act or omission that exposed Mr. Gorton to asbestos occurred prior to the enactment of section 5301, i.e., prior to 1978, this court would not have general jurisdiction over that defendant based solely upon the defendant's qualification as a foreign corporation in Pennsylvania. Without the express language of section 5301 the court would not have a sufficient basis to conclude that the defendant knowingly and voluntarily consented to the general jurisdiction of Pennsylvania courts.

The analysis, however, is different if a defendant's alleged acts or omissions that caused Mr. Gorton's asbestos exposure occurred after section 5301 was enacted in 1978. The Third Circuit Court of Appeals held in <u>Bane</u> that based upon the explicit language in section 5301, a corporation consents to the general jurisdiction of Pennsylvania courts when it applies for and receives a certificate of authority from the state. The pertinent issue in this case is whether Ford or the telephone defendants consented to general jurisdiction via registration as a foreign corporation and not whether their contacts with Pennsylvania were so continuous and systematic that they are viewed as "at home" in the state. Neither Ford nor the telephone defendants persuasively argued that <u>Daimler</u> somehow altered or abdicated general jurisdiction via consent. The issue before the Court in <u>Daimler</u> was whether the defendant-corporation's relationship with the forum state was significant enough for the defendant-corporation to be considered "at home"

in the forum state. The only reference to "consent" in <u>Daimler</u> is a quote from <u>Goodyear</u>, in which the Court recognized that the general jurisdiction found in <u>Perkins</u> was not based upon a defendant's consent to be sued in a particular forum. <u>Daimler</u>, 134 S.Ct. at 755-56 ("'<u>Perkins</u>…remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation **that has not consented to suit in the forum**.'") (quoting <u>Goodyear</u>, 564 U.S. at 927) (emphasis added). <u>Daimler</u> does otherwise mention consent or expressly provide that its holding eliminated a party's ability to consent to be sued in a particular forum. <u>Id.</u>;[4] <u>Accorda Therapeutics, Inc. v. Mylan Pharmaceuticals Inc.</u>, 78 F.Supp.3d 572, 591 (D. Del. 2015) ("In short, the undersigned Judge does not believe that <u>Daimler</u> meant, sub silentio, to eliminate consent as a basis for jurisdiction. Such a holding would threaten to fundamentally alter the personal jurisdiction defense from a waivable to a non-waivable right, a characteristic of the defense that was not before the <u>Daimler</u> Court and is not explicitly addressed in its opinion.").

The court in <u>Bors</u> concluded:

---

[4]    The court in <u>Bors</u>, which also addressed the argument that <u>Daimler</u> overruled <u>Bane</u>, explained:

> The ruling in <u>Daimler</u> does not eliminate consent to general personal jurisdiction over a corporation registered to do business in Pennsylvania. The court in <u>Otsuka</u> noted <u>Daimler</u> contained "but one fleeting reference to the concept of jurisdiction by consent." The Supreme Court in <u>Daimler</u> referenced jurisdiction by consent when discussing general jurisdiction to distinguish between "consensual" jurisdiction and "non-consensual bases for jurisdiction," not to "doubt the validity of consent-based jurisdiction." In <u>Forest Labs., Inc. v. Amneal Pharm. LLC</u>, the Court held <u>Daimler</u> did not overrule "nearly century-old Supreme Court precedent regarding what amounts to voluntary consent to jurisdiction when (1) <u>Daimler</u> never says it is doing any such thing; and (2) what <u>Daimler</u> does say about consent to jurisdiction suggests just the opposite." In <u>Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.</u>, the Court held "<u>Daimler</u> does not eliminate consent as a basis for a state to establish general jurisdiction over a corporation which has appointed an agent for service of process in that state, as is required as part of registering to do business in that state".

<u>Bors</u>, 208 F.Supp.3d at 653 (footnotes omitted).

Consent remains a valid form of establishing personal jurisdiction under the Pennsylvania registration statute after Daimler. The Supreme Court did not eliminate consent. Parties can agree to waive challenges to personal jurisdiction by agreements in forum selection clauses or, as here, by registering to do business under a statute which specifically advises the registrant of its consent by registration. We do not see a distinction between enforcing a forum selection clause waiving challenges to personal jurisdiction and enforcing a corporation's choice to do business in the Commonwealth….[The defendant] does not, and cannot, claim prejudice from its known choice to register in Pennsylvania.

Bors, 208 F. Supp. 3d at 655. Not surprisingly, neither Ford nor the telephone defendants cited a decision in which a court rejected Bane's interpretation of section 5301 following Daimler; indeed, courts within the Third Circuit that have analyzed section 5301 following Daimler continue to follow Bane. Pager v. Metro. Edison, Civ. Action No. 17-934, 2018 WL 491014, at *2 (M.D. Pa. Jan. 19, 2018); Plumbers' Local Union No. 690 Health Plan v. Apotex Corp., Civ. Action No. 16-665, 2017 WL 3129147, at *10 (E.D. Pa. July 24, 2017); Hegna v. Smitty's Supply, Inc., Civ. Action No. 16-3613, 2017 WL 2563231, at *4 (E.D. Pa. June 13, 2017); Bors, 208 F. Supp. 3d at 655.

Based upon the foregoing—in the absence of the express language set forth in section 5301—qualifying as a foreign corporation in a state is not a sufficient basis upon which to conclude that a corporation is "at home" in the state. Because the explicit general-jurisdiction language in section 5301 did not exist prior to 1978, a defendant qualified to do business in Pennsylvania prior to that time under Daimler would not be subject to the personal jurisdiction of courts located in Pennsylvania based only upon that defendant's qualification as a foreign corporation in the state. On the other hand, Daimler did not abdicate or overrule Bane, and after 1978 under section 5301 a corporation that applies for and receives a certificate of authority to do business in Pennsylvania consents to the general jurisdiction of state and federal courts in Pennsylvania. As fully explained below, however, section 5301 is subject to temporal limits and

whether Ford or a telephone defendant consented to general jurisdiction in Pennsylvania by applying for and receiving a certificate of authority is based upon the timing of those defendants' alleged acts or omissions that exposed Mr. Gorton to asbestos.

### c. Consent to general jurisdiction and temporal limits of section 5301

Under the traditional consent theory of jurisdiction, there is no specific time period in which consent or waiver must occur:

> a party's consent to a court's jurisdiction may take place prior to the suit's institution ..., or at the time suit is brought ..., or after suit has started. And having objected to the absence of in personam jurisdiction, a defendant may rescind the objection, i.e., consent to the forum court's jurisdiction, at any stage of the proceedings.

Gen. Contracting & Trading Co. v. Interpole, Inc., 940 F.2d 20, 22 (1st Cir.1991) (internal citations omitted). As recognized by the court of appeals in Bane, however, general jurisdiction based upon qualification as a foreign corporation in Pennsylvania is limited by the section of Pennsylvania's long-arm statute that is at issue here. See Bane, 925 F.2d at 641. That section provides that jurisdiction is only "to the extent authorized by the consent." 42 Pa. Cons. Stat. § 5301(b)(ii). General jurisdiction based upon section 5301(a)(i) over a defendant-corporation that is qualified as a foreign corporation under Pennsylvania law is, therefore, limited to the time period during which the defendant-corporation is actually qualified as a foreign corporation under Pennsylvania law, i.e., it has a valid certificate of authority to do business in the state. 42 Pa. Cons. Stat. § 5301(b); George v. A.W. Chesterton Co., Civ. Action No. 16-115, s, at *2 (W.D. Pa. Sept. 16, 2016) (citing In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig., 735 F. Supp. 2d 277, 310 (W.D. Pa. 2010), aff'd, 683 F.3d 462 (3d Cir. 2012) ("[I]f the certificate of authority is withdrawn, general jurisdiction only exists over acts or transactions occurring during the period of authorization.")). The court in George recognized:

[T]he Court of Appeals for the Third Circuit in <u>Bane</u> recognized the temporal limits of consent-by-registration, if not expressly, by implication, observing that the defendant "applied to do business in Pennsylvania and received authorization to do so from 1984 through 1988," during which time "[the plaintiff's] cause of action arose." <u>Bane</u>, 925 F.2d at 640; <u>id.</u> at 640-41 (finding personal jurisdiction over defendant-employer, because the plaintiff's "discharge, which form[ed] the basis of [his] suit, occurred while [the defendant] was qualified to do business in Pennsylvania"). Other court rulings are consistent. <u>See, e.g.</u>, <u>Atlantic Pier Associates, LLC v. Boardakan Rest. Partners, L.P.</u>, 2010 WL 3069607, at *1-2 (E.D. Pa. Aug. 2, 2010) (it was "undisputed that [the opponent of personal jurisdiction] was qualified to do business as a foreign corporation...from January 1993 until May 22, 2006," and, pursuant to § 5301(b), the court could "exercise jurisdiction over [it] for 'any act, transaction or omission' that occurred during that thirteen-year interval") (internal citation omitted); <u>Perry v. Markman Capital Mgmt., Inc.</u>, 2002 WL 31248038, at *4 n.7 (E. D. Pa. Oct. 4, 2002) (jurisdiction-by-consent "is determined by a corporation's status at the time the relevant event(s) occurred").

<u>George</u>, 2016 WL 4945331, at *3.

### d. Analysis

Based upon the foregoing statement of the law, the remaining issues before the court with respect to whether the court has general jurisdiction over Ford or a telephone defendant are in large part factual. The court must determine for Ford and each telephone defendant: (1) the date on which plaintiffs allege that defendant's act or omission caused Mr. Gorton's exposure to asbestos; and (2) whether on that date the defendant was qualified as a foreign corporation in Pennsylvania.

### i. Ford

There is a dispute between plaintiffs and Ford about the year in which Mr. Gorton was allegedly exposed to Ford's asbestos-containing products. Mr. Gorton testified at his deposition that he worked on Ford vehicles while employed by a garage for at least six months in 1981, but an "itemized statement of earnings" from the Social Security Administration shows that Mr. Gorton worked for the garage in 1982. The court in deciding the motion to dismiss for lack of

personal jurisdiction must resolve any factual disputes in plaintiffs' favor. WRIGHT, MILLER, & STEINMAN, supra. The court, therefore, finds that Mr. Gorton worked on Ford vehicles for at least six months in 1982. It is undisputed that Ford has been registered as a foreign corporation with the Commonwealth of Pennsylvania since March 15, 1920. (H.T. 1/29/2018 at 20; Pls' Ex. 2.) In other words, Ford was qualified as a foreign corporation in Pennsylvania at the time plaintiffs allege Mr. Gorton came into contact with asbestos-containing Ford products.

Ford argues, however, that it is not subject to the general jurisdiction of Pennsylvania courts because Pennsylvania law did not provide that qualification as a foreign corporation would subject it to the general jurisdiction of Pennsylvania courts when (1) it became qualified as a foreign corporation in Pennsylvania in 1920, or (2) Mr. Gorton was allegedly exposed to Ford's asbestos-containing products in 1981. (ECF No. 230 at 7.) Ford's arguments are not persuasive. First, section 5301—with its explicit language about general jurisdiction—became effective on June 27, 1978. Ford is, therefore, correct that there is no evidence that in 1920 it consented via qualification as a foreign corporation to the general jurisdiction of Pennsylvania courts. The evidence does show, however, that in 1982 when Mr. Gorton was allegedly exposed to Ford's asbestos-containing products, Ford was qualified as a foreign corporation in Pennsylvania. Ford did not present any evidence to show that it was unaware of the consequences of its continued qualification as a foreign corporation in Pennsylvania following the enactment of section 5301 in 1978, i.e., evidence to show it did not knowingly and voluntarily consent to the general jurisdiction of courts within Pennsylvania by remaining qualified as a foreign corporation in the state. As plaintiffs point out, Ford could have withdrawn its registration, pursuant to 15 PA. CONS. STAT. § 415. Ford did not withdraw its registration; rather, it remained registered as a foreign corporation in Pennsylvania and continued to make

filings in Pennsylvania. (Pls. Ex. 2.) Under those circumstances, the evidence presented is sufficient to show that Ford consented to the general jurisdiction of courts within Pennsylvania via its qualification as a foreign corporation, pursuant to section 5301. Ford's motion to dismiss will, therefore, be denied with respect to the argument that this court lacks personal jurisdiction over Ford.

### ii.    Pacific Bell

From September 1962 until July 1968, Mr. Gorton was employed by Pacific Bell in Los Angeles, California. (ECF No. 1-4 ¶ 8(b).) Pacific Bell first registered as a foreign corporation with Pennsylvania on February 5, 1996. (H.T. 1/29/2018 at 20; Pls' Ex. 3.) Pacific Bell, therefore, did not consent to the general jurisdiction of courts within Pennsylvania until *after* the time in which plaintiffs allege it caused Mr. Gorton's exposure to asbestos in this case. Under those circumstances, the court cannot discern a valid basis upon which it may exercise general jurisdiction over Pacific Bell. Pacific Bell will, therefore, be dismissed from this case for lack of personal jurisdiction.

### iii.    Nevada Bell

In 1978, and from 1986 through 1988, Mr. Gorton was employed by Nevada Bell in Carson City, Nevada, North Lake Tahoe, Nevada, and Reno, Nevada. (Id. ¶ 8(e).) Nevada Bell, however, never registered as foreign corporation in Pennsylvania. (H.T. 1/29/2018 at 16-17.) Under those circumstances, the court cannot discern a valid basis upon which it may exercise general jurisdiction over Nevada Bell. Nevada Bell will, therefore, be dismissed from this case for lack of personal jurisdiction.

### iv.    AT&T, Inc.

From 1986 through 1988, Mr. Gorton was employed by AT&T, Inc. in Columbus, Ohio. (Id. ¶ 8(f)-(g).) AT&T, Inc., however, never registered as a foreign corporation in Pennsylvania. (H.T. 1/29/2018 at 16-17.) Under those circumstances, the court cannot discern a valid basis upon which it may exercise general jurisdiction over AT&T, Inc. AT&T, Inc. will, therefore, be dismissed from this case for lack of personal jurisdiction.

### v.    AT&T Communications Inc. and AT&T Corp.

From 1986 through 1988, Mr. Gorton was employed by AT&T Communications Inc. in Columbus, Ohio. (Id. ¶ 8(f)-(g).) There is no evidence of record[5] to show that AT&T Communications Inc. ever qualified as a foreign corporation in Pennsylvania. In 2010, AT&T Communications Inc. merged into AT&T Corp. (H.T. 1/29/2018 at 14-15, 36.) Counsel for the telephone defendants conceded on the record at the hearing on January 29, 2018, that the liabilities of AT&T Communications Inc. would run to AT&T Corp. (H.T. 1/29/2018 at 15.) AT&T Corp. has been registered as a foreign corporation in Pennsylvania since June 4, 1912. (H.T. 1/29/2018 at 20; Pls.' Ex. 1.)   Under those circumstances, the liabilities of AT&T Communications Inc., including its acts or omissions that allegedly caused Mr. Gorton's exposure to asbestos, would be attributed to AT&T Corp., which at the time those acts or omissions occurred was qualified as a foreign corporation in Pennsylvania. Simmers v. Am. Cyanamid Corp., 576 A.2d 376, 387 (Pa. Super. Ct. 1990). This court, therefore, has personal jurisdiction over AT&T Corp. because AT&T Corp. was qualified as a foreign corporation in Pennsylvania at the time its predecessor, AT&T Communications Inc., committed acts or omissions that allegedly exposed Mr. Gorton to asbestos. See In re Des Cases, 789 F.Supp. 552, 591 (E.D.N.Y. 1992) (holding that where a successor corporation that consented to general

---

[5]     At the hearing held on January 29, 2018, counsel for the telephone defendants represented to the court that AT&T Communications Inc. never registered as a foreign corporation in Pennsylvania. (H.T. 1/29/2018 at 15; 36.)

jurisdiction in a state was being sued for the liabilities of its predecessor in that state, the district court in that state had personal jurisdiction over the successor corporation even though it would not have personal jurisdiction over the predecessor corporation).

The telephone defendants argue, however, AT&T Corp. never consented to general jurisdiction of courts in Pennsylvania because at the time A&T Corp. registered in the state, Pennsylvania law did not expressly provide that qualification as a foreign corporation constituted consent to general jurisdiction of courts within Pennsylvania. AT&T Corp.'s arguments—for reasons similar to the reasons set forth above with respect to Ford—are not persuasive. AT&T Corp. is correct that there is no evidence that in 1912 it knowingly and voluntarily consented via qualification as a foreign corporation to the general jurisdiction of Pennsylvania courts. Section 5301—with its explicit language about general jurisdiction—did not become effective until June 27, 1978. From 1986 through 1988 when Mr. Gorton was allegedly exposed to asbestos while working for AT&T Communications Inc., AT&T Corp. was qualified as a foreign corporation in Pennsylvania, and, thus, was subject to the general jurisdiction of courts in Pennsylvania, pursuant to section 5301. AT&T Corp. did not present any evidence to show that it was unaware of the consequences of its continued qualification as a foreign corporation in Pennsylvania following the enactment of section 5301 in 1978, i.e., evidence to show it did not knowingly and voluntarily consent to the general jurisdiction of courts within Pennsylvania. As plaintiffs point out, AT&T Corp. could have withdrawn its registration, pursuant to 15 PA. CONS. STAT. § 415. AT&T Corp. did not withdraw its registration; rather, it remained registered as a foreign corporation in Pennsylvania and continued to make filings in the state. (ECF No. 232-1 at 2.) Under those circumstances, the evidence presented is sufficient to show that AT&T Corp. consented to the general jurisdiction of courts within Pennsylvania via its continued qualification

as a foreign corporation, pursuant to section 5301, and it was qualified as a foreign corporation at the time its predecessor engaged in acts or omissions that allegedly caused Mr. Gorton to be exposed to asbestos. The telephone defendants' motion to dismiss will, therefore, be denied with respect to the argument that this court lacks personal jurisdiction over AT&T Corp.

### vi.    Conclusion with respect to general jurisdiction

The motions to dismiss will be granted with respect to Pacific Bell, Nevada Bell, and AT&T, Inc. because this court lacks personal jurisdiction over those defendants. The motions to dismiss will be denied with respect to the personal jurisdiction arguments raised by Ford and AT&T Corp.

### C.  Arguments raised under Federal Rule of Evidence 12(b)(6)

Having determined that this court has personal jurisdiction over Ford and AT&T Corp., the court must address their arguments that plaintiffs in the complaint failed to state any plausible claims for relief. As Ford and the telephone defendants suggest, the allegations of the complaint are overwhelmingly conclusory and are in large part recitations of the elements of each claim. The conclusory allegations prevent the court from engaging in a true choice of law analysis, which is required in light of the at least five forums mentioned in the complaint (Pennsylvania, Arizona, California, Nevada, and Ohio). The parties in their briefing also did not conduct any choice of law analyses. Thus, no party adequately analyzes the issues in accordance with the Third Circuit Court of Appeals' three-step analysis set forth in <u>Connelly v. Lane Constr., Corp.</u>, 809 F.3d 780, 876-87 (3d Cir. 2016).

Plaintiffs' pleading failures are evidenced by their request that the court apply state court pleading standards and consider Mr. Gorton's deposition and response to interrogatories in deciding the Rule 12(b)(6) issues raised by the motions to dismiss. The court must reject

plaintiffs' requests. First, "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings." Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 427 (1974) (quoted by Hicks v. Boeing Co., Civ. Action No. 13-393, 2014 WL 1284904, at *2 (D. Del. Mar. 21, 2014)). Thus, the pleading requirements for asbestos cases in Pennsylvania state court are not applicable to decide the motions to dismiss pending before this federal court. Hicks, 2014 WL 1284904, at *2 ("Thus, the guidelines for asbestos actions in Delaware State courts are irrelevant in the context of the pending Motion to Dismiss, as are Plaintiff's assertions concerning the Complaint's adequacy under such guidelines."). The Rule 12(b)(6) arguments raised in the motions to dismiss must, therefore, be decided in accordance with Iqbal and Twombly.

Second, the court declines plaintiffs' invitation to consider answers to interrogatories or Mr. Gorton's deposition, i.e., *evidence extrinsic to the complaint*, in deciding the motions to dismiss. Generally, to the extent the court considers evidence beyond the complaint in deciding a Rule 12(b)(6) motion, it is converted to a motion for summary judgment. Anjelino v. N.Y. Times Co., 200 F.3d 73, 88 (3d Cir. 1999). In resolving a Rule 12(b)(6) motion, the court may look beyond the complaint to matters of public record, including court files and records, documents referenced in the complaint, and documents essential to a plaintiff's claims and attached to either the plaintiff's complaint or the moving defendants' Rule 12(b)(6) motions to dismiss. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). It would not be appropriate for the court in deciding the motions to dismiss to consider documents generated after the filing of the complaint, e.g., the answers to interrogatories or Mr. Gorton's deposition. Lepage's Inc. v. 3M, Civ. Action No. 97-3983, 1997 WL 734005, at *7 n.2 (E.D. Pa. Nov. 14, 2007) (rejecting the plaintiff's request for the court to consider a response to interrogatories in

deciding a motion to dismiss, explaining "[i]t would be inappropriate for the Court to consider evidence outside the pleadings, and in this case generated subsequent to the pleadings, in this Motion to Dismiss."). The court will not, therefore, consider the responses to the interrogatories or Mr. Gorton's deposition in determining whether plaintiffs stated plausible claims for relief in the complaint.

For the reasons set forth above, the claims asserted against Ford and AT&T Inc. will be dismissed without prejudice. Plaintiffs will be permitted to file an amended complaint setting forth factual allegations sufficient to state plausible claims for relief. To the extent any defendant wishes to file a motion to dismiss the amended complaint, however, that defendant and plaintiffs in response must comply with the three-step analysis set forth by the Third Circuit Court of Appeals in Connelly and include in their analyses a choice of law analysis[6] on each claim with respect to each defendant.[7]

_____

[6]

       Where federal jurisdiction is based on diversity of citizenship, such as in the instant case, the Court must apply the choice-of-law rules of the state in which it sits. St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 n. 3 (3d Cir.1991) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Plaintiff filed this action in the Eastern District of Pennsylvania. Thus, Pennsylvania choice-of-law rules apply.

       Under Pennsylvania choice-of-law rules, "the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law." City of Philadelphia v. One Reading Ctr. Assoc., 143 F.Supp.2d 508, 512 (E.D.Pa.2001) (quoting Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir.1999)). If the parties have agreed to the applicable law, that agreed-upon law shall generally be given effect. Id. In this case, neither party suggests that the policies included a relevant choice-of-law provision.

       Where there is no choice-of-law provision agreed upon by the parties, "before a choice of law question arises, there must actually be a conflict between the potentially applicable bodies of law." On Air Entm't Corp. v. Nat'l Indem. Co., 210 F.3d 146, 149 (3d Cir.2000); see also Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir.1994). Where the relevant laws of the jurisdictions are the same,

Ford and the telephone defendants request the court certify for interlocutory appeal the issue whether <u>Bane</u> remains good law after <u>Daimler</u>. The court would be inclined to grant that request[8] if plaintiffs stated plausible claims for relief against Ford or AT&T Corp. The court

---

"there is no conflict of law, and the court should avoid the conflict of law question" as the outcome is the same under the substantive law of either jurisdiction. <u>On Air Entm't</u>, 210 F.3d at 149; <u>see also</u> <u>Lucker Mfg.</u>, 23 F.3d at 813.3

<u>Henkel Corp. v. Hartford Acc. & Indem. Co.</u>, 399 F. Supp. 2d 607, 610–11 (E.D. Pa. 2005), aff'd, 271 F. App'x 161 (3d Cir. 2008).

[7]   Having concluded that plaintiffs failed to state a claim for relief in the complaint, the court need not address the telephone defendants' arguments about the affirmative defense of workers' compensation exclusivity and the telephone defendants' motion to dismiss with respect to the workers' compensation exclusivity argument will be denied as moot. The court, however, notes that workers' compensation exclusivity is an affirmative defense, the burden of proof of which is on the defendant asserting the defense. <u>Doney v. Tambouratgis</u>, 587 P.2d 1160, 1164 (Cal. 1979); <u>see</u> <u>Thomas v. Reserves Network</u>, Civ. Action No. 10-9886, 2011 WL 5515559, at *6 (Ohio App. 9 Dist. Nov. 14, 2011); <u>Lewis v. School Dist. of Phila.</u>, 538 A.2d 862 (Pa. 1988); <u>McColl v. Scherer</u>, 315 P.2d 226, 228 (Nev. 1957). Although the court is not prohibited from considering an affirmative defense when deciding a motion to dismiss, the affirmative defense must be "apparent on the face of the complaint[;]" otherwise, the court must deny the motion "pending further development of the record." <u>Guidotti v. Legal Helpers Debt Resolution, L.L.C.</u>, 716 F.3d 764 (3d Cir. 2013). In light of plaintiffs' pleading insufficiencies, i.e., their overwhelming reliance on conclusory allegations, the court could not conclude that the affirmative defense of worker's compensation exclusivity is apparent on the face of the complaint. Also, plaintiffs did not address the issue under Nevada, California, or Ohio law. The court should grant the telephone defendants' motion to dismiss for failure to state a claim in light of plaintiffs' reliance on conclusory allegations and deny as moot and without prejudice the telephone defendants' motion to dismiss with respect to the affirmative defense of worker's compensation exclusivity.

[8]   The court—at the appropriate time and in consideration of the controlling nature of the issues and the substantial ground for difference of opinion—may also sua sponte certify the issues: (1) whether Ford consented to the general jurisdiction of Pennsylvania courts when it registered as a foreign corporation with the state prior to the enactment of section 5301 in 1978 and continued to be qualified as a foreign corporation after that date; and (2) whether this court has personal jurisdiction over AT&T Corp. because it was qualified as a foreign corporation in Pennsylvania at the time its predecessor, AT&T Communications Inc., committed acts or omissions that allegedly exposed Mr. Gorton to asbestos. <u>Amerisourcebergen Drug Corp. v.</u>

would need to consider all relevant factors,[9] including whether the issue would involve a controlling question of law, there is substantial ground for difference of opinion with respect to the issue, and the resolution of that issue is likely to have an impact on other cases.[10] The request for an immediate appeal of the issue, however, is premature because plaintiffs did not state plausible claims for relief against Ford or AT&T Corp. Under those circumstances, the issue is

---

Meier, No. CIV.A.03-CV-6769, 2005 WL 2645000, at *3 (E.D. Pa. Oct. 14, 2005) ("While neither the Plaintiffs nor Defendants in this case have formally moved for certification of this Court's Orders for interlocutory appeal, we have the authority under § 1292(b) to certify our orders sua sponte.") (citing United States v. Stanley, 483 U.S. 669, 673 (1987) (footnote omitted)).

[9]    Certification for an interlocutory appeal from an order is proper where: (1) the order to be appealed involves a controlling question of law; (2) there is substantial ground for difference of opinion on that question of law; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. Simon v. United States, 341 F.3d 193, 199 (3d Cir. 2003) (citing 28 U.S.C. § 1292(b)). One treatise has explained:

> The three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal. The advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling. The disadvantages of immediate appeal increase with the probabilities that lengthy appellate consideration will be required, that the order will be affirmed, that continued district-court proceedings without appeal might moot the issue, that reversal would not substantially alter the course of district-court proceedings, or that the parties will not be relieved of any significant burden by reversal.

16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3930 (3d ed. 2012). Courts apply § 1292(b) only in rare situations where certification will not violate the "traditional federal policy against piecemeal appeals." 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, RICHARD L. MARCUS & ADAM N. STEINMAN, FEDERAL PRACTICE & PROCEDURE § 2658.2 (3d ed.).

[10]    The court may consider "the impact that an appeal will have on other cases" in deciding whether to certify an issue for interlocutory appeal. Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990).

not controlling and would not have any impact on the resolution of this case. Certification of the issue for interlocutory appeal is, therefore, not appropriate at this time. The requests for certification for an interlocutory appeal will be denied as premature and without prejudice to Ford or AT&T Corp. raising the issue at a time when this court's personal jurisdiction over those defendants is at issue in the case.

## VII. Conclusion

Plaintiffs did not satisfy their burden to show that this court has personal jurisdiction—either specific or general—over Pacific Bell, Nevada Bell, or AT&T, Inc. On the other hand, this court does have personal jurisdiction over Ford and AT&T Corp. Ford was qualified as a foreign corporation under 42 PA. CONS. STAT. § 5301 at the time plaintiffs allege that Ford caused Mr. Gorton's exposure to asbestos. AT&T Corp. was likewise qualified as a foreign corporation in Pennsylvania under section 5301 at the time its predecessor, AT&T Communications Inc., committed acts or omissions that allegedly exposed Mr. Gorton to asbestos. The allegations in the complaint, however, are conclusory and do not pass muster under the applicable pleading standards.

Ford's motion to dismiss will, therefore, be granted with respect to its Rule 12(b)(6) arguments and denied with respect to its Rule 12(b)(2) arguments. The telephone defendants' motion to dismiss will be granted with respect to: (1) their Rule 12(b)(6) arguments; and (2) this court lacking personal jurisdiction over Pacific Bell, Nevada Bell, and AT&T, Inc. The telephone defendants' motion to dismiss will be denied with respect to its arguments that this court: (1) lacks subject-matter jurisdiction because of worker's compensation exclusivity; and (2) lacks personal jurisdiction over AT&T Corp.

The dismissals of the claims asserted against Ford and AT&T Corp. under Rule 12(b)(6) are without prejudice. On or before April 20, 2018, plaintiffs may file an amended complaint. If plaintiffs do not file an amended complaint against those defendants on or before that date, the dismissals of those claims will be with prejudice.

The requests for certification of an issue for interlocutory appeal will be denied as premature because the claims against Ford and AT&T Corp. are being dismissed. The denial of the request for an interlocutory appeal, however, is without prejudice to a renewed request for interlocutory appeal if plausible claims are asserted against Ford or AT&T Corp. and personal jurisdiction is once against at issue in this case.

An appropriate order will be entered.

BY THE COURT,

Dated: March 19, 2018                    /s/ JOY FLOWERS CONTI
                                         Joy Flowers Conti
                                         Chief United States District Judge