# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA (Harrisburg)

| | |
|---|---|
| **RHONDA J. GORTON,** Personal Representative for the Estate of **THOMAS D. GORTON, II**, and in her own right, <br><br> Plaintiff, <br> v. <br><br> **Air & Liquid Systems Corporation** *As Successor-by-Merger to Buffalo Pumps*, et al., <br><br> Defendants. | Civ. Action No. 1:17-1110 |

## OPINION

### I.  Introduction

Plaintiff Rhonda J. Gorton ("Mrs. Gorton"), as a personal representative for the Estate of Thomas D. Gorton, II, and for herself,[1] filed a first amended complaint against defendant AT&T Corp. among numerous other defendants, alleging the defendants caused Mrs. Gorton's late husband Thomas D. Gorton, II ("Mr. Gorton") to be exposed to asbestos, which caused his death. The court dismissed the first amended complaint with respect to AT&T Corp. because Mrs. Gorton failed to state a plausible claim for relief against AT&T Corp. Currently pending before the court is a motion for leave to file a second amended complaint ("motion for leave") (ECF No. 396) against AT&T Corp. AT&T Corp opposes that motion and argues that Mrs. Gorton's motion for leave should be denied because she did not cure the pleading deficiencies that caused this court to dismiss the claims asserted against AT&T Corp. in the first amended complaint.

---

[1]  There are two plaintiffs in this case, i.e., Mrs. Gorton and the estate of Mrs. Gorton's late husband, Thomas D. Gorton, II. Mrs. Gorton is the personal representative of the Estate of Thomas D. Gorton, II. References to Mrs. Gorton in this opinion are intended to refer to Mrs. Gorton in her own right and as the personal representative of her husband's estate.

For the reasons set forth in this opinion the motion for leave to file a second amended complaint will be granted with respect to Mrs. Gorton's intentional tort claims asserted against AT&T Corp., her claims asserted against AT&T Corp. based upon its role as the manufacturer and provider of asbestos-filled pillows or bags to Mr. Gorton's other telephone-company employers, and the claim for loss of consortium based upon those claims. The motion for leave to file a second amended complaint will be denied in all other respects. Within two weeks of the filing of this opinion and accompanying order, Mrs. Gorton in accordance with this opinion shall file her second amended complaint with revisions to exclude claims against AT&T Corp. except for those identified as plausible claims in this opinion.

**II.    Procedural History with respect to the pending Motion for Leave**

This court dismissed the claims in the original complaint asserted against AT&T Corp. because the claims did not satisfy the standards set forth under Federal Rule of Civil Procedure 12(b)(6). The court rejected the jurisdictional challenges[2] raised by AT&T Corp. and permitted Mrs. Gorton to file an amended complaint to address the pleading insufficiencies cited by the court.

Mrs. Gorton filed a first amended complaint. AT&T Corp. filed a motion to dismiss the first amended complaint. The court granted the motion to dismiss pursuant to Rule 12(b)(6) because Mrs. Gorton failed to set forth allegations to show plausibly that Mrs. Gorton is entitled to relief. The court permitted Mrs. Gorton to file a motion for leave to file a second amended complaint, which Mrs. Gorton filed on December 5, 2019. The motion was denied, however, because Mrs. Gorton failed to attach to the motion for a leave a copy of the proposed second amended complaint. The court permitted Mrs. Gorton to file a renewed motion for leave to file a

---

[2]    AT&T Corp. argued under Federal Rule of Civil Procedure 12(b)(1) and (b)(2) that this court did not have personal jurisdiction over AT&T Corp. or jurisdiction over the claims asserted against it.

second amended complaint, which is currently pending before the court. In the proposed second amended complaint, Mrs. Gorton asserts the following counts against AT&T Corp., which were also asserted against AT&T Corp. in the first amended complaint:

- Count One—Product Liability against all defendants;
- Count Two—Breach of Implied Warranty against all defendants;
- Count Three—Negligence against all defendants;
- Count Four—Intentional Conduct Fraudulent Concealment against all defendants;
- Count Five—Premises Liability against AT&T Corp., among other defendants;
- Count Six—Conspiracy against defendants other than AT&T Corp.; and
- Count Seven—Loss of Consortium against all defendants.

(ECF No. 396-1.)

AT&T Corp. filed a response in opposition to the motion for leave in which it argues that the motion for leave should be denied because: (1) Mrs. Gorton ignores this court's prior dismissal of various defendants; (2) the proposed second amended complaint does not state a plausible claim against AT&T Corp.; and (3) Mrs. Gorton's claims are barred by the exclusivity provisions of the Ohio Workers' Compensation Act, OHIO REV. CODE §§ 4123.01-4123.99.

The motion for leave having been fully briefed is now ripe to be decided by the court.

**III.     Factual Allegations in the Amended Complaint with respect to AT&T Corp.**

In January 2017, Mr. Gorton was diagnosed with mesothelioma, which was caused by his exposure to asbestos. (ECF No. 396-1 ¶ 24.) Mr. Gorton was a resident of Pennsylvania when his symptoms began to manifest after many years of asbestos exposure. (Id. ¶ 1.) On or about March 6, 2018, Mr. Gorton died from respiratory failure caused by mesothelioma. (Id. ¶ 5.)

From 1959 through the early 2000s, Mr. Gorton breathed air that was contaminated with asbestos dust and fibers shed by asbestos products sold, manufactured, supplied, or distributed upon the premises owned by defendants, including AT&T Corp. (Id. ¶ 23.) Each defendant has transacted or is transacting business in Pennsylvania. (Id. ¶ 17.) AT&T Corp. first registered to do business in Pennsylvania in 1912 and continues to be registered as a foreign corporation in the state. (Id. ¶ 18.)

From 1986 through 1988, Mr. Gorton was employed by AT&T, Inc. and AT&T Communications Inc. (not AT&T Corp.) as a service technician. (ECF No. 396-1 ¶ 21(f) and (g).) Mr. Gorton installed telephone cable "throughout the Columbus, Ohio location[.]" (Id. at 21(g).) Throughout the relevant time period, Mr. Gorton worked in California, Montana, Nevada, Oregon and Ohio for various telephone companies as a telephone installer, repairman and technician. (Id. ¶¶ 21(i), 47.) During his employment by the various telephone companies, he was exposed to asbestos-containing bags or pillows "believed to be manufactured by AT&T Corp." and "used to plug cable and telephone holes." (Id.) The "asbestos-containing products released dangerous levels of airborne asbestos fiber during application, deterioration and removal." (ECF No. 396-1 ¶ 51) According to Mrs. Gorton, AT&T Corp. knew (based upon its review of "substantial medical and scientific data") that the asbestos-filled pillows or bags "were, or were likely to become, hazardous to the life, health and safety" of Mr. Gorton, who was exposed to the asbestos-filled pillows or bags.(ECF No. 396-1 ¶¶ 42, 58.) AT&T Corp., however, did not remove or contain the asbestos or warn Mr. Gorton about "the dangerous and defective condition of…[its] premises brought by the presence of asbestos." (Id. ¶¶ 57, 58.) At the hearing with respect to the motions to dismiss the original complaint held on January 29,2018, counsel for AT&T Corp. represented that in 2010, AT&T Communications Inc. merged into AT&T Corp. (H.T. 1/29/2018 at 14-15, 36.)

Mrs. Gorton alleges that numerous defendants named in the complaint formed a conspiracy to "market asbestos products by unlawful means, including…,…suppressing their knowledge of the dangers of asbestos and of placing into the stream of commerce, without adequate testing or warnings, their asbestos products, which were unreasonably dangerous, ultra hazardous, deleterious, carcinogenic and potentially deadly." (ECF No. 391-1 ¶ 61.) Mrs. Gorton names at least twenty-three defendants in the conspiracy count of the complaint, but does not specifically name AT&T Corp. or set forth any allegations with respect to AT&T Corp. and the alleged conspiracy. (See id. ¶¶ 60-64.)

**IV.     Standard of Review**

Federal Rule of Civil Procedure 15(a) provides, in pertinent part, that "[t]he court should freely give leave when justice so requires." "The Supreme Court has instructed that although 'the grant or denial of an opportunity to amend is within the discretion of the District Court,…outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.'" Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962) ). The Third Circuit Court of Appeals has explained:

> There are three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend: when "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."

U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 249 (3d Cir. 2016) (quoting U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 849 (3d Cir. 2014)).

As discussed above, Rule 15 "does not permit amendment when it would be futile. Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be

granted.'" Kenny v. United States, 489 F. App'x 628, 633 (3d Cir. 2012) (quoting Burtch v. Milberg Factors, Inc., 662 F.3d 212, 231 (3d Cir. 2011)). "The standard for deciding whether claims are futile for the purpose of granting leave to amend a complaint is the same as a motion to dismiss." Markert v. PNC Fin. Servs. Grp., Inc., 828 F. Supp. 2d 765, 771 (E.D. Pa. 2011). "[I]f the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied." See CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 2010).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and plain statement of a claim and show that the pleader is entitled to relief. The pleadings must "provide enough information to put a defendant on sufficient notice to prepare…[a] defense and also ensure that the Court is sufficiently informed to determine the issue.'" Prater v. Am. Heritage Fed. Credit Union, No. 18-CV-5515, 2019 WL 132395, at *2 (E.D. Pa. Jan. 7, 2019) (quoting Fabian v. St. Mary's Med. Ctr., Civ. Action No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 20017)). This essentially means that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face[,]" i.e., to satisfy the pleading standards under Rule 12(b)(6). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Twombly, 550 U.S. at 555. A "formulaic recitation

of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.. . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

(Id.) (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

The Court of Appeals for the Third Circuit has instructed that "a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Constr., Corp., 809 F.3d 780, 876-87 (3d Cir. 2016). The court of appeals explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."(citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). A plaintiff must set forth "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of the claim for relief. Connelly, 809 F.3d at 789; Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017).

7

**V.     Discussion**

Rule 15(a) provides that leave to amend shall be freely granted. As discussed above, however, AT&T Corp. argues that the motion for leave should be denied because: (1) Mrs. Gorton ignores this court's prior dismissal of various defendants; (2) the proposed second amended complaint does not state a plausible claim against AT&T Corp.; and (3) Mrs. Gorton's claims are barred by the exclusivity provisions of the Ohio Workers' Compensation Act.  Each of those arguments will be addressed below.

**A.  Mrs. Gorton Ignores this Court's Prior Dismissal of Various Defendants**

On March 19, 2018, this court held it did not have personal jurisdiction over Pacific Bell Telephone Co. ("Pacific Bell"), Nevada Bell Telephone Co. ("Nevada Bell"), and AT&T, Inc. and dismissed all claims asserted against those defendants. (ECF No. 260.) AT&T Corp. argues that Mrs. Gorton ignored the court's dismissal of those entities as parties to this case and attempted to name them as defendants in the proposed second amended complaint. Despite reference to those parties in the proposed second amended complaint, see (ECF No. 396-1 ¶¶ 14, 18, 19, 46), the court does not discern from the motion for leave that Mrs. Gorton seeks to rename Pacific Bell, Nevada Bell, or AT&T, Inc. as parties in this lawsuit; rather, the motion for leave is focused upon Mrs. Gorton's allegations against AT&T Corp. To the extent AT&T Corp. is correct, however, and Mrs. Gorton seeks to rename those parties as defendants in this case, she did not seek proper reconsideration of the court's prior ruling dismissing all claims against them for lack of personal jurisdiction and this court's prior decision on that matter remains in full force and effect. Pacific Bell, Nevada Bell, and AT&T, Inc. are not parties in this case because the court lacks personal jurisdiction over them. The court in this opinion will focus its analysis of the motion for leave on Mrs. Gorton's claims against AT&T Corp.

As discussed below, Mrs. Gorton's motion for leave to file a second amended complaint will be granted in part and denied in part. Mrs. Gorton shall—in accordance with this court's prior rulings—omit from the second amended complaint any reference to claims asserted against telephone companies other than AT&T Corp. See, e.g., (ECF No. 396-1 ¶¶ 14, 18, 19, 46.)[3]

**B. Plausible Claims against AT&T Corp.**

As this court previously explained, Mrs. Gorton's claims against AT&T Corp. are based, in part, upon allegations that from 1986 through 1988 Mr. Gorton was employed as a service technician by AT&T Corp. and exposed to asbestos contained in bags or pillows used to plug cable telephone holes while working in a building located in Columbus, Ohio. The court previously dismissed all claims asserted against AT&T Corp. because Mrs. Gorton did not set forth factual allegations to show plausibly that AT&T Corp. could be held liable for exposing Mr. Gorton to the asbestos contained in the bags or pillows while working in the building in Columbus Ohio.

Mrs. Gorton's allegations about Mr. Gorton's asbestos exposure while working in the Columbus, Ohio building are all based upon the bags or pillows used by Mr. Gorton during that time period.[4] Whether AT&T Corp. may be held liable for Mr. Gorton's alleged exposure to the

---

[3] **Mrs. Gorton shall also omit from the second amended complaint any reference to the first amended complaint or original complaint and her attempt to "incorporate…by reference" paragraphs of those complaints into the second amended complaint. See, e.g., (ECF No. 396-1 ¶¶ 1, 26, 34, 36, 40, 45, 60, 65.) Mrs. Gorton shall set forth all allegations and claims in the second amended complaint without reference to or incorporation of prior complaints.**

[4] Mrs. Gorton does not sufficiently allege that the building in Columbus, Ohio contained asbestos other than what was contained in the bags or pillows; indeed, while Mrs. Gorton alleges that Mr. Gorton while working for all telephone companies was exposed to "known large quantities of asbestos-containing products…including equipment and products with which…[he] was specifically working," the only equipment or product cited by Mrs. Gorton is the asbestos-filled pillows or bags. (ECF No. 391-1 ¶ 50.)

9

asbestos-filled pillows or bags is based—in part—upon whether AT&T Corp. manufactured those pillows or bags.

In the first amended complaint, Mrs. Gorton alleged that Mr. Gorton was exposed to asbestos:

> Throughout his employment with the various phone companies, Mr. Gorton was exposed to asbestos containing bags or pillows believed to be manufactured by AT&T used to plug cable and telephone holes[.]

(ECF No. 284 ¶ 21(g) and (i).) This court held that based upon the foregoing allegations, Mrs. Gorton did not set forth factual allegations sufficient to plausibly show that AT&T Corp.—as opposed to AT&T, Inc. over which this court does not have personal jurisdiction—manufactured the asbestos-filled bags or pillows. The court dismissed the claims against AT&T Corp. on that basis.

In the proposed second amended complaint, Mrs. Gorton alleges that:

> Throughout his employment with the various phone companies, Mr. Gorton was exposed to asbestos containing bags or pillows believed to be manufactured by AT&T Corp., used to plug cable and telephone holes.

(ECF No. 396-1 ¶ 21(i).) Thus, Mrs. Gorton clarifies in the proposed second amended complaint that she believes AT&T Corp.—as opposed to AT&T Inc., over which this court does not have personal jurisdiction—manufactured the asbestos-filled bags or pillows to which Mr. Gorton was exposed.

AT&T Corp. argues that the foregoing allegations are not sufficient to show plausibly that it manufactured the asbestos-filled bags or pillows because they are based upon only Mrs. Gorton's "belief" that AT&T Corp. manufactured the asbestos-filled bags or pillows.(ECF No. 399 at 4.) The Third Circuit Court of Appeals has explained, however, that allegations based upon "information and belief" are permissible "when the facts at issue are peculiarly within the defendant's possession." Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 107 (3d Cir.

2015); McDermott v. Clondalkin Grp., Inc., 649 F. App'x 263, 268 (3d Cir. 2016). A plaintiff who is pleading upon "information and belief," must "accompany…[his or her] legal theory with factual allegations that make…[his or her] theoretically viable claim plausible." McDermott, 649 F. App'x at 107. Here, facts about whether AT&T Corp. manufactured the asbestos-filled pillow or bags are within AT&T Corp.'s control, and Mrs. Gorton sufficiently alleged that Mr. Gorton was employed by AT&T Corp. as a service technician performing work with the asbestos-filled pillow or bags at the time he was allegedly exposed to asbestos. Under those circumstances, Mrs. Gorton's allegations about AT&T Corp. manufacturing the asbestos-filled pillows or bags are plausible.[5]

AT&T Corp. also argues that Mrs. Gorton's allegations against AT&T Corp. are insufficient to state plausible claims for relief because Mrs. Gorton does not allege that Mr. Gorton breathed asbestos dust generated from the bags or pillows. (ECF No. 399 at 5.) Under either Pennsylvania or Ohio law,[6] however, a plaintiff suing based upon exposure to asbestos may rely upon circumstantial evidence to prove his or her injuries were caused by the

---

[5] If AT&T Corp. did not manufacture the asbestos-filled pillows or bags, it may file an answer in this case asserting that factual allegation, request the court order Mrs. Gorton to file a reply to the answer, and move for judgment on the pleadings after the reply is filed with respect to Mrs. Gorton's claims based upon AT&T Corp. manufacturing the asbestos-filled pillows or bags.

[6] The Third Circuit Court of Appeals has predicted that the Pennsylvania Supreme Court would hold that "Pennsylvania's choice of law analysis employs depecage, the principle whereby 'different states' laws may apply to different issues in a single case.'" Taylor v. Mooney Aircraft Corp., 265 F. App'x 87, 91 (3d Cir. 2008) (quoting Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006)); McDonald v. Whitewater Challengers, Inc., 116 A.3d 99, 107 (Pa. Super. Ct. 2015).
   AT&T Corp. performed a choice of law analysis with respect to whether Mrs. Gorton's claims are barred by Pennsylvania's or Ohio's workers' compensation laws. That analysis is discussed in section C of this opinion. Neither party, however, performed a choice of law analysis to determine whether there is an applicable conflict between the laws of Pennsylvania and Ohio with respect to whether a plaintiff may prove his or her asbestos-related injuries were caused by the defendant's conduct with circumstantial evidence.

defendant's conduct. See Gregg v. V–J Auto Parts, Co., 943 A.2d 216, 227 (Pa. 2007); OHIO REV. CODE ANN. § 2307.96; Fisher v. Beazer E., Inc., No. 99662, 2013 WL 6221367, at *5 (Ohio Ct. App. Nov. 27, 2013). Here, at the pleading stage, the court is satisfied that Mrs. Gorton set forth factual allegations sufficient from which a reasonable inference may be drawn that Mr. Gorton was exposed to and inhaled asbestos fibers emanating from the asbestos-filled pillows or bags allegedly manufactured by AT&T Corp. Mrs. Gorton alleged that the asbestos-containing products release dangerous levels of asbestos fibers during their use and that for two years Mr. Gorton worked with and was exposed to the asbestos-filled pillows or bags as a service technician for AT&T Corp. Under those circumstances, Mrs. Gorton in the proposed second amended complaint set forth factual allegations to show plausibly that AT&T Corp.'s conduct caused Mr. Gorton's asbestos-related injuries.

### C. The Ohio Workers' Compensation Act

In its motion to dismiss the first amended complaint, AT&T Corp. argued that Mrs. Gorton's claims were barred by provisions of the Ohio Workers' Compensation Act. The court, however, did not rule upon the issue because neither Mrs. Gorton nor AT&T Corp. performed a choice of law analysis to determine whether the workers' compensation laws of Ohio or Pennsylvania law applied to this case. The court explained:

> If Mrs. Gorton intends to file a claim based upon Mr. Gorton's employment by AT&T Communications Inc. at the time he was allegedly exposed to asbestos, a choice of law analysis will be necessary for the court to decide whether Mrs. Gorton's claims against AT&T Corp. are barred under workers' compensation laws because the parties did not agree upon the applicable state law and there appears to be a conflict between the workers' compensation laws of Pennsylvania and Ohio…. Under Pennsylvania law, "'[e]mployees who are injured at work are limited to the compensation available to them under the…[Pennsylvania Workers' Compensation Act ("PWCA")] and cannot separately sue their employers for personal injury.'" Smith v. Am. Airlines, Inc., No. CV 16-156, 2016 WL 8735710, at *4 (E.D. Pa. Aug. 12, 2016) (quoting Ochs v. Reading Hosp., 647 F. App'x 126, 128 (3d Cir. 2016) (citing 77 PA. CONS. STAT. § 481(a).)). Injuries for "occupational disease," e.g., cancers related to exposure to asbestos, are covered by the PWCA's

12

exclusivity provision. Id. There are, however, exceptions to the exclusivity provision of the PWCA. For example, "'the PWCA provides that 'whenever occupational disease is the basis for compensation, ... it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment.'" Smith, 2016 WL 8735710, at *5 (quoting 77 Pa. Cons. Sat. § 411(2).)) The PWCA does not provide an exception for claims based upon an employer's intentional conduct, i.e., an employee cannot separately sue its employer for injuries caused by the employer's intentional conduct. Winterberg v. Transp. Ins. Co., 72 F.3d 318, 322 (3d Cir. 1995) (citing Poyser v. Newman, 522 A.2d 548 (Pa. 1987)).

      Under Ohio law, "[g]enerally, 'actions for injuries sustained in the course of employment must be addressed within the framework of Ohio's workers' compensation statutes.'" Roberts v. RMB Ents., Inc., 967 N.E.2d 1263, 1270 (Ohio Ct. App. 2011) (quoting Rijo v. Reading Rock, Inc., Civ. Action No. 2007-09-223, 2008 WL 2635523, at *2 (Ohio Ct. App. July 7, 2008)). There exists an exception to the general rule; "when an employer's conduct is sufficiently egregious to rise to the level of an intentional tort an employee may institute an intentional-tort claim against his employer under R.C. 2745.01, Ohio's Employer Intentional Tort statute." Id. Neither party cited to any exception under Ohio law that permits employees to sue their employers for injuries, e.g., occupational diseases, that occur more than three hundred weeks after the last day of employment.

      Under those circumstances, there is a conflict between Pennsylvania and Ohio workers' compensation laws. Caldwell v. Peterburg Stone Co., No. 02 CA8, 2003 WL 21443746, at*4 (Ohio Ct. App. June 7, 2003) ("Since it does appear, given the Pennsylvania Supreme Court's interpretation of that state's workers compensation law in Poyser, that Ohio and Pennsylvania law are conflicted, choice of law analysis must be addressed in this case.").

(ECF No. 346 at 14-17.) The court instructed that if Mrs. Gorton intended to file a second amended complaint, the parties must conduct a choice of law analysis to determine whether the workers' compensation laws of Pennsylvania or Ohio applied to Mrs. Gorton's claims against AT&T Corp. (Id. at 17.)

In the motion for leave to file a second amended complaint, Mrs. Gorton recognizes AT&T Corp.'s argument about the Ohio Workers' Compensation law, but did not perform a choice of law analysis to determine whether that law bars her claims. (ECF No. 391 at 3-4.) Mrs. Gorton argues, however, that even if Ohio's laws apply to her claims against AT&T Corp., "there is an exception for an employer's intentional conduct which was alleged in Count Four of

13

the…proposed Second Amended Complaint" and her claims against AT&T Corp. are not based solely on her employment with AT&T Corp. (Id. at 4.) According to Mrs. Gorton, she alleges that she was exposed to asbestos products manufactured by AT&T Corp. while she was "working for companies other than defendant." (Id.) The court will first conduct a choice of law analysis based upon the information cited by AT&T Corp. and then decide whether Mrs. Gorton's claims against AT&T Corp. are barred by workers' compensation laws.

The court must apply Pennsylvania choice of law rules. See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 582, (2013) ("A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits.") (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 494–49 (1941)). One court recently explained:

> Pennsylvania's choice of law analysis involves a two-part inquiry. First, "[b]efore a choice of law question arises, there must be a conflict between the potentially applicable bodies of law." See On Air Entm't Corp. v. Nat'l Indemn. Co., 210 F.3d 146, 148–49 (3d. Cir. 2000). If there are relevant differences between the laws, the court then classifies the conflict as "true," "false," or "unprovided-for." Hammersmith, 480 F.3d at 230. When a true conflict exists, the court proceeds to the second step in the analysis and, analyzing each forum's relevant contacts, applies the law of the state with the greater interest in the matter at hand. Hammersmith, 480 F.3d at 230–31.

DeSimone v. U.S. Claims Servs., Inc., No. CV 19-6150, 2020 WL 1164794, at *2 (E.D. Pa. Mar. 11, 2020). As discussed above, this court already identified a conflict between Pennsylvania and Ohio law relevant to this case; indeed, AT&T Corp. agrees that a conflict of law exists. (ECF No. 399 at 7.) The court must determine whether the conflict is a "true conflict." Id.

The court finds this conflict is a "true conflict" because each forum has strong interests in enforcing its workers' compensation laws and there are relevant differences about whether the workers' compensation laws apply to bar claims of intentional torts. See Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994) (recognizing that "that Pennsylvania has a strong

interest in protecting the terms of the PWCA"); Hutton v. Delaware River Port Auth., No. CIV. A. 91-7049, 1992 WL 276983, at *2 (E.D. Pa. Sept. 30, 1992) (recognizing Ohio's strong interests in the enforcement of its workers' compensation laws). The court must, therefore, proceed to the second step of the inquiry which considers each forum's relevant contacts to the case.

The court in Atkinson v. Luitpold Pharmaceuticals, Inc., 414 F. Supp. 3d 742 (E.D. Pa. 2019), explained:

> In evaluating the most significant relationship, Pennsylvania courts look to the factors in the Restatement (Second) of Conflicts: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered.

Id. at 745. Based upon the allegations of the proposed second amended complaint: (1) Mr. Gorton was allegedly exposed to asbestos in Ohio; (2) AT&T Corp. employed Mr. Gorton and Mr. Gorton came into contact with the asbestos-filled pillows or bags in Ohio; (3) Mrs. Gorton is domiciled in Pennsylvania and Mrs. Gorton does not allege the domicile of AT&T Corp.;[7] (4) the relationship between Mr. Gorton and AT&T Corp. was centered in Ohio. Under those circumstances, Ohio has the most significant relationship to and the greater interest in the claims arising between Mrs. Gorton and AT&T Corp. The court will, therefore, apply Ohio law to determine whether Mrs. Gorton's claims are barred under Ohio's Workers' Compensation laws.

As explained above:

> Under Ohio law, "[g]enerally, 'actions for injuries sustained in the course of employment must be addressed within the framework of Ohio's workers' compensation statutes.'" Roberts v. RMB Ents., Inc., 967 N.E.2d 1263, 1270 (Ohio Ct. App. 2011) (quoting Rijo v. Reading Rock, Inc., Civ. Action No. 2007-09-223, 2008 WL 2635523, at *2 (Ohio Ct. App. July 7, 2008)). There exists an exception

---

[7] Evidence was presented in this case that AT&T Corp. has been registered as a foreign corporation with the Commonwealth of Pennsylvania since June 4, 1912. (H.T. 1/29/2018 at 20; Pls.' Ex. 1.)

15

to the general rule; "when an employer's conduct is sufficiently egregious to rise to the level of an intentional tort an employee may institute an intentional-tort claim against his employer under R.C. 2745.01, Ohio's Employer Intentional Tort statute." Id.

(ECF No. 346 at 14-17.) Based upon the foregoing, Mrs. Gorton's claims based upon AT&T Corp.'s employment of Mr. Gorton and its allegedly reckless or negligent conduct that caused Mr. Gorton's asbestos-related injuries are barred under the Ohio Workers' Compensation laws. Mrs. Gorton's motion for leave to file a second amended complaint to assert those claims will, therefore, be denied.

Mrs. Gorton argues, however, that Ohio's Workers' Compensation laws do not apply to bar all her claims against AT&T Corp. because she asserts a claim based upon AT&T Corp.'s intentional conduct, i.e., count four of the proposed second amended complaint for intentional fraudulent concealment. OHIO REV CODE § 2745.01 provides:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

Id. Based upon the foregoing, an employee in Ohio may sue its employer for an intentional tort if the employer acted with "deliberate intent to cause them harm" or "knowledge that harm was a substantial certainty." Cantrell v. GAF Corp., 999 F.2d 1007, 1016 (6th Cir. 1993)

AT&T Corp. argues that Mrs. Gorton did not set forth an intentional tort claim in the proposed second amended complaint. Count four of the proposed second amended complaint, however, is a claim for intentional fraudulent concealment based upon defendants' failure to warn Mr. Gorton about the dangers posed by their asbestos-containing products. A claim of fraudulent concealment has the same elements under Pennsylvania and Ohio law. See Marcum v. Columbia Gas Transmission, LLC., No. CV 19-3873, 2019 WL 6217878, at *2 (E.D. Pa. Nov. 20, 2019) (setting forth the elements under Pennsylvania law); Laber v. United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, 126 F. Supp. 3d 934 (N.D. Ohio 2015) (setting forth the elements under Ohio law). The elements of fraudulent concealment are:

(1) an omission where there is a duty to speak;

(2) the omission was material to the transaction at hand;

(3) the omission was made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) the omission was made with the intent of misleading another into relying on it;

(5) the plaintiff justifiably relied on the omission; and

(6) the resulting injury was proximately caused by the reliance.

Marcum, 2019 WL 6217878, at *2; Laber, 126 F.Supp.3d at 943. Federal Rule of Civil Procedure 9(b) provides:

> (b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b).

In the proposed second amended complaint, Mrs. Gorton alleges that: (1) AT&T Corp. manufactured the asbestos-filled pillows or bags; (2) AT&T Corp. supplied the pillows or bags to

Mr. Gorton as part of his employment with AT&T Corp.; (3) AT&T Corp. knew (based upon "substantial medical and scientific data") that the asbestos-filled pillows or bags "were, or were likely to become, hazardous to the life, health and safety" of Mr. Gorton who was exposed to the asbestos-filled pillows or bags; (4) Mr. Gorton for two years worked with asbestos-filled pillows or bags unaware of the dangers posed by the asbestos-filled products; and (5) the exposure to the asbestos-filled pillow or bags caused Mr. Gorton's asbestos-related injuries. (ECF No. 391-1 ¶¶ 21(g), 21(i), and 41-44.) Based upon the foregoing, Mrs. Gorton set forth factual allegations sufficient to show plausibly that AT&T Corp. concealed the danger of the asbestos-filled pillows or bags from Mr. Gorton with knowledge that harm to Mr. Gorton was a substantial certainty. Mrs. Gorton's claim for fraudulent concealment asserted against AT&T Corp. is, therefore, not barred by Ohio's Workers' Compensation laws. The motion for leave to file a proposed second amended complaint will, therefore, be granted with respect to the fraudulent concealment claim asserted against AT&T Corp.

Mrs. Gorton also argues that her product liability claim against AT&T Corp. is not barred by the Ohio Workers' Compensation laws because she is suing AT&T Corp. as the manufacturer and provider of the asbestos-filled bags and pillows that Mr. Gorton used as part of his employment by telephone-companies other than AT&T Corp. during the relevant time period. (ECF No. 396 at 4.) One court has explained:

> Under the dual-capacity doctrine, " 'an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.' " Freese v. Consolidated Rail Corp., 4 Ohio St.3d 5, 8, 445 N.E.2d 1110 (1983) (quoting 2 Larson's Workmen's Compensation Law, § 72.80 (Desk Ed.1982)).

Oros v. Hull & Assocs., Inc., 302 F. Supp. 2d 839, 845 (N.D. Ohio 2004). The Ohio Supreme Court has explained:

18

> Whatever the test applied to determine the status of the party claimed to owe an obligation, be it based upon a consideration of whether there exists an unrelated or independent relationship of the parties other than employer and employee, or based upon a test of whether the employment relationship is incidental or predominant, the same result may be reached. In either approach, what must be determined is whether the employer stepped out of his role as such, and had assumed another hat or cloak.

Freese v. Consol. Rail Corp., 445 N.E.2d 1110, 1114 (Ohio 1983). The court in Oros explained that an employer may be sued if it acts as a manufacturer or supplier of a product unrelated to its employer-employee relationship:

> The Ohio Supreme Court has acknowledged that an employer can play two roles—employer and manufacturer, for example—but both roles can be interrelated. Schump v. Firestone Tire and Rubber Co., 44 Ohio St.3d 148, 152, 541 N.E.2d 1040 (1989). Therefore, an employer could produce a product both for the general public and for its own use. In that case, the employer is liable to an employee under the dual-capacity doctrine only when the employee's use of the employer's product occurs outside the employment relationship. See id. at 152–53, 541 N.E.2d 1040 (employer manufactured tires for public consumption and its own company use; when employee was injured as a result of tires furnished to plaintiff solely as an employee, the dual-capacity doctrine did not apply).

Oros, 302 F. Supp. 2d at 845.

Here, Mrs. Gorton sued AT&T Corp. based upon Mr. Gorton's exposure to the asbestos-filled pillows or bags during his employment as a service technician with AT&T Corp. at the Columbus, Ohio facility **and** based upon AT&T Corp. manufacturing and providing the asbestos-filled pillows or bags to the other telephone companies for which Mr. Gorton worked. Under those circumstances, Mrs. Gorton's claims against AT&T Corp. based upon AT&T Corp.'s role as the manufacturer and provider of the asbestos-filled pillows or bags to Mr. Gorton's *other* telephone-company employers are not barred by Ohio's Workers' Compensation Act. The motion for leave to file a proposed second amended complaint will, therefore, be granted with respect to Mrs. Gorton's claims asserted against AT&T Corp. based upon its role as

the manufacturer and provider of the asbestos-filled pillows or bags to Mr. Gorton's other telephone-company employers.

## VI. Conclusion

The motion for leave to file a second amended complaint (ECF No. 396) will be granted to the extent Mrs. Gorton set forth claims against AT&T Corp. based upon: (1) AT&T Corp.'s employment of Mr. Gorton and its alleged intentional fraudulent concealment of the dangers posed by the asbestos-filled pillows or bags provided to Mr. Gorton as part of his employment with AT&T Corp.; (2) AT&T's Corp.'s role in manufacturing the asbestos-filled pillows or bags and providing them to Mr. Gorton's various telephone-company employers for his use; and (3) the loss of consortium claim based upon those claims.

The motion for leave to file a second amended complaint (ECF No. 396) will be denied with respect to any other claim asserted against AT&T Corp., including any claim based upon its negligent or reckless conduct as Mr. Gorton's employer.

Within two weeks of the entry of this opinion and accompanying order, Mrs. Gorton shall file a second amended complaint in accordance with this opinion.

BY THE COURT,

Dated: April 1, 2020

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge